IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CRABAR/GBF, INC., ) | CASE NO. 8:16-cv-00537 |
| ) | |
| Plaintiff/Counter-Defendant, ) | **BRIEF IN SUPPORT OF PLAINTIFF'S** |
| ) | **COMBINED MOTION TO DISMISS DEFENDANT** |
| vs. ) | **WRIGHT PRINTING CO.'S COUNTERCLAIM** |
| ) | **AND DEFENDANT WRIGHT'S COUNTERCLAIM** |
| MARK WRIGHT AND WRIGHT PRINTING ) | |
| CO., ) | |
| ) | |
| Defendants/Counter-Plaintiffs. ) | |

Plaintiff-Counterdefendant CRABAR/GBF, INC. ("Crabar") respectfully submits this brief in support of its Combined Motion to Dismiss the Counterclaim of Defendant-Counterplaintiff MARK WRIGHT ("Wright") and Counterclaim of Defendant-Counterplaintiff WRIGHT PRINTING COMPANY ("WPCO").

### FACTUAL ALLEGATIONS OF THE COUNTERCLAIMS

WPCO and Wright have each filed a Counterclaim against Crabar as part of their respective Answers to Crabar's Amended Complaint. (Dkt. # 49 and # 50). The Counterclaims are substantively identical. (*Id.*). Each Counterclaim alleges that Crabar breached the "Mutual Non-Disparagement" clause (the "Non-Disparagement Clause" or "Non-Disparagement Covenant") in a "Release and Waiver Agreement" between Crabar and WPCO that took effect on June 25, 2015. (Dkt # 49, Page ID ## 848-856; Dkt # 50, Page ID ## 1017-1025). Wright signed a "Joinder" on the same day, June 25, 2015, whereby he "confirm[ed] his agreement with the Non-Disparagement Covenant provisions of the Agreement." (Dkt # 49-7, Page ID # 896).

The Non-Disparagement Covenant binding Crabar forbids Crabar and its Affiliates (referred to henceforth herein collectively as "Crabar") from making any statement or communication in any form during the two-year period June 25, 2015 through June 25, 2017:

{00163327-1} 1

> …that might reasonably be construed to be derogatory or critical of, or negative toward, Mr. Mark Wright or the Seller [*i.e.*, WPCO] or any of Seller's directors, officers, Affiliates, subsidiaries, employees, agents or representatives (collectively, the "Seller Representatives"), or to malign, harm, disparage, defame or damage the reputation or good name of Mr. Wright, the Seller, its business or any of the Seller Representatives.

(Dkt 49-7, Page ID ## 892-93).

The capitalized word "Affiliates" in the Non-Disparagement Covenant has the same meaning as in the Asset Purchase and Sale Agreement between Crabar and WPCO Dated as of September 23, 2013 (the "APA"). (*See* Dkt 49-7, Page ID # 892, ¶ 9(a)). The APA defines "Affiliate" as follows:

> "Affiliate" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with such Person provided that, for purposes of this definition, "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or by contract or otherwise.

(Dkt # 45, Page ID # 701).

The Counterclaims allege two types of statements as the basis for the breach of Non-Disparagement Clause claims against Crabar. First, each Counterclaim alleges that Crabar made statements about its landlord's unwillingness to renew Crabar's lease, the consequent relocation of Crabar's business from its old plant location in Omaha to Columbus, Kansas, and the resulting adverse impact on sales. (Counterclaims, ¶¶ 22, 23, 25, 26, 27, 28 and Exs. 8, 9, 10 and 11). Second, each Counterclaim alleges that Crabar "and/or" officers of Crabar "and/or" employees of Crabar "and/or" affiliates of Crabar told customers that "Wright and/or WPCO, its employees or representatives" caused delays in filling orders and a decline in service because of prior mismanagement of the business Crabar purchased from WPCO. (Counterclaims, ¶ 24).

Regarding the issue of lease renewal, Defendants-Counterplaintiffs attach a series of e-mails between the parties as Exhibits 2 through 6 to the Wright Counterclaim, which are incorporated by reference in both Counterclaims. (Dkt # 49-2 - # 49-6, Page ID 871-888; Dkt # 49, ¶¶ 14-16; Dkt # 50, ¶¶ 14-16). These e-mails reflect the lease renewal negotiations and span the period from September 3, 2014 through May 19, 2015. (*Id*.). The e-mails show that Defendant Wright terminated the lease renewal negotiations on April 15, 2015 by e-mail, advising Crabar's representative, Michael Magill: "Thanks for your patience while we made our decision. We have decided to list the building for sale which means it will be necessary for you to be out by September 30th 2015." (Counterclaim, Ex. 6, p. 1, Dkt # 49-6, Page ID # 885).

## ARGUMENT

### I. The Counterclaims Fail to State a Plausible Claim Upon Which Relief Can be Granted for Breach of the Non-Disparagement Agreement by Crabar.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This pleading requirement reinforces one of the fundamental purposes of Federal Rule 8(a): *i.e.*, to put the defendant on reasonable notice of the claim asserted against it. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint has facial plausibility when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 55 U.S. at 678 (2009). A court must accept all factual allegations as true; however, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Demien Constr. Co. v. O'Fallon Fire Prot. Dist.*, 812 F.3d 654, 657 (8th Cir. 2016). Similarly, where the

plaintiff attaches an exhibit to the complaint, the plain language of the exhibit overrides any inconsistent allegation or characterization of the exhibit in the pleading. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir. 1994).

### A. The Counterclaims Fail to State a Plausible Claim Based On the "Landlord" Allegations.

The Counterclaims fail to state a claim upon which relief can be granted based on the "landlord" statements for several reasons, including because none of those statements can plausibly be construed as untrue or disparaging of Wright, WPCO or any of WPCO's "Affiliates."

First, none of the alleged "landlord" statements mention Wright or WPCO. (*See* Counterclaims, ¶¶ 22, 23, 25, 26, 27, 28 and Exs. 8, 9, 10 and 11). The alleged statements merely refer to the "landlord." (*Id*.). According to paragraphs 11 and 12 of the Counterclaims, a limited liability company named 11616 "I" Street, LLC ("11616 "I" Street") is the landlord, not WPCO or Wright. (*Id.*). While Wright is alleged to be one of the two members of the 11616 "I" Street, having organized the LLC as a separate legal entity, neither Wright nor the other member can dispute its separate existence. Accordingly, neither Wright nor WPCO should be permitted to treat statements about the "landlord" as statements about them.

Second, the statements that the landlord terminated lease renewal discussions and listed the building for sale are true, and Wright's or WPCO's allegations to the contrary should be disregarded. Exhibit 6 to the Counterclaims establishes that Defendant Wright *in fact* terminated lease renewal negotiations via an e-mail on April 15, 2015, when he declared that "we" decided

to list the building for sale rather than reletting it. (Counterclaim, Ex. 6, p. 1, Dkt # 49-6, Page ID # 885). This fact overrides any contrary allegation or suggestion in the body of the Counterclaims. *London v. RBS Citizens, N.A.*, 600 F.3d 742, 747 (7th Cir. 2010) (facts reflected in an Exhibit referenced in a pleading trumps any contradictory allegation in the pleading itself); *accord*, *Northern Indiana Gun & Outdoor Shows*, 163 F.3d at 455; *ALA, Inc.*, 29 F.3d at 859 n. 8. For purposes of deciding this Motion, therefore, the statement that the landlord ended renewal negotiations and listed the building for sale is true and uncontestable.

Third, not only are the "landlord" statements true, none of the statements could reasonably be construed as disparaging of the "landlord," much less of WPCO or Wright. A statement that a landlord would not renew a lease or ended lease renewal negotiations and listed the building for sale, unaccompanied by any statement or suggestion that the landlord was not acting within its rights, do not plausibly support a claim of disparagement of the landlord. To the contrary, these are neutral statements of fact, neither disparaging nor complimentary.

Fourth and finally, Wright's and WPCO's allegation that Crabar blamed its service interruptions on Wright or WPCO should also be disregarded because, once again, the allegation contradicts the exhibits attached to, and incorporated by reference in, the Counterclaims. Exhibit 8 to the Counterclaims reflects that Crabar's CEO and President stated in Crabar's annual report that "Folder Express was forced to move from its previous location when the landlord would not renew the lease *and suitable space in Omaha was not available*." (Counterclaim, Ex. 8, 4th page, Dkt. # 49-8, Page ID # 900) (Emphasis added). Likewise, contrary to WPCO's and Wright's characterization of Exhibit 10 to the Counterclaims, Exhibit 10 reflects that Crabar's David Crysler took "full responsibility for the service disruption that occurred as a result of the move." (Counterclaim, Ex. 10, Dkt # 49-10, Page ID # 984). The plain language of these

Exhibits overrides Defendant-Counterplaintiffs' mischaracterization of the Exhibits. *Northern Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 455. Moreover, these statements cannot reasonably be construed as disparaging of the landlord irrespective of the truth of the statements because neither statement suggests or insinuates that the landlord acted inappropriately in non-renewing the lease.

In conclusion on this point, nowhere in any of the Exhibits to the Counterclaims does anyone associated with Crabar state or imply that its former landlord lacked the right to end lease renewal negotiations and not renew the lease. Those Exhibits reflect, moreover, that Crabar took full responsibility for all service disruptions caused by its move. In short, the Exhibits to the Counterclaims, which override any contradictory allegations and characterizations in the Counterclaims, demonstrate that Crabar's actual statements regarding the "landlord" are not only true, but are non-disparaging irrespective of the truth of the statements. For this reason, the Counterclaims fail to state a plausible claim of breach of the Non-Disparagement Clause based on Crabar's "landlord" statements.

### B. The Counterclaims Fail to State a Plausible Claim Based on the "Mismanagement" Allegation.

Each Counterclaim likewise fails to state a claim upon which relief can be granted based on the "mismanagement" allegation in paragraph 24 because that allegation is hopelessly equivocal and ambiguous as to: (1) who allegedly made the mismanagement statements, (2) the alleged form of the statements; (3) to whom the statements allegedly were made; (4) the person about whom the statements allegedly were made; and (5) when the statements purportedly were made.

Paragraph 24 of the Counterclaims alleges:

> On information and belief, both before and after execution of the Release Agreement, Crabar and/or its officers, employees, or affiliates communicated to customers in the custom folder business that Wright and/or Wright Printing, its employees or representatives were the cause of Crabar's delays in filling orders and decline in service because of prior mismanagement of the Folder Express, Progress Publications, and Progress Publications Music businesses by Wright and/or Wright Printing, its directors, officers or employees.

Regarding the ambiguity of who allegedly made this statement, Defendants-Counterplaintiffs' disjunctive phrasing renders it unclear whether they are accusing Crabar or some unidentified "affiliate" of Crabar of being the maker of the statement. If the alleged maker of the statements is an "affiliate" of Crabar's, the allegation in paragraph 24 fails to support the cause of action because the Counterclaim is devoid of any factual allegations that would bring the unidentified affiliate within the scope of the defined term "Affiliate" in the APA.

With respect to the ambiguity in the <u>form</u> of the statement, paragraph 24 merely alleges that the wrongdoer "communicated to customers" without specifying whether this communication was verbal, in correspondence, sent via e-mail, or took some other form. This ambiguity likewise fails to support the allegation of breach of the Non-Disparagement Clause.

As for the ambiguity in identifying <u>to whom</u> the alleged statements were made, paragraph 24 alleges, on information and belief, that the statements were made "to customers" without identifying a single such customer. That Defendants-Counterplaintiffs lack information to identify a single customer to whom the alleged mismanagement statement was made undermines the plausibility and adequacy of the pleading.

Regarding the ambiguity of the target of the alleged statements, the alleged target group "Wright and/or Wright Printing, its employees or representatives" makes it unclear whether the alleged statements were made about one of the Defendants or about a "representative" of one of them. If the alleged statement was made about a "representative," each Counterclaim fails to

allege any facts about this representative, much less enough facts to bring the alleged statement within the ambit of the Non-Disparagement Clause. This ambiguity regarding the object of the alleged statements likewise fails to support the Non-Disparagement clause claim.

Finally, regarding the ambiguity about when the alleged statements were made, the allegation "both before and after execution of the Release Agreement" encompasses all of time. Defendants-Counterplaintiffs' inability to narrow the timeframe of the alleged statements at all likewise underscores the inadequacy of their pleading.

The boilerplate "information and belief" allegation in paragraph 24 of the Counterclaims is just the sort of conclusory, unparticularized allegation other federal district courts have found inadequate to state a claim of disparagement. For example, in *Structural Preservation Sys., LLC v. Andrews*, 931 F. Supp. 2d 667 (D. Md. 2013), the plaintiff alleged that the defendant breached a non-disparagement clause in an employment agreement by making:

> [S]everal disparaging remarks and false accusations against SPS including but not limited to that SPS is involved in a bid rigging scheme, has raided other corporate entities and interfered with other business's ventures, and is engaged in racism and discrimination.

*Id.* at 680. The court dismissed the non-disparagement claim pursuant to Rule 12(b)(6) because the plaintiff did "not allege the particular nature of the remarks or to whom or when such remarks were made." *Id*.

The boilerplate allegation of disparagement based on "mismanagement" in this case is even vaguer than the allegations in *Structural Preservation Systems* because the allegation here does not definitively identify who made the disparaging statement, does not definitively identify the target of the alleged disparagement, does not provide any specificity as to the nature of the alleged "communication" or "mismanagement," and does not allege a meaningful time-frame in which the statement was made. In short, the "mismanagement" allegation in paragraph 24 of the

Counterclaims is so vague and ambiguous that it does not provide Crabar with reasonable notice of the claim being made against it. Just as the allegations in *Structural Preservation Systems* failed to state a plausible claim of disparagement due to their lack of particularity, the "mismanagement" allegation in the Counterclaims here fail to state a plausible claim due to its utter lack of any specificity.

> **II. In the Alternative, the Counterclaim-Plaintiffs Should be Ordered to Join the Landlord as a Party Required to be Joined by Fed. R. Civ. Proc. 19(a) and, if they Fail to do so, the Counterclaims should be Dismissed Pursuant to Fed. R. Civ. Proc. 12(b)(7).**

If the Court concludes the "landlord" allegations of the Counterclaims adequately state a claim of breach of the Non-Disparagement Clause, the Court should direct the Counterclaim-Plaintiffs to join the landlord as a necessary party under Fed. R. Civ. Proc. 19(a). *See* Fed. R. Civ. Proc. 19(a)(1)(B). If the Counterclaim-Plaintiffs refuse or fail to join the landlord, the Counterclaims should be dismissed pursuant to Fed. R. Civ. Proc 12(b)(7).

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failure to join a party under Rule 19, the Court must first determine if the party is a "necessary party" under Federal Rule 19(a)(1). *Reefer Sys. v. Southard Fin., LLC*, No. 8:16 CV 93, 2016 U.S. Dist. LEXIS 119905, *7 (D. Neb., Sept. 6, 2016). Under Rule 19(a)(1), a party is "necessary" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties;
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*Id.* "If the Court determines that the party is "necessary," subject to service of process, and joinder would not deprive the Court of subject matter jurisdiction, then the Court must order that the person be made a party." *Id.* (citations omitted); *see* Fed. R. Civ. Proc. 19(a)(2). "If the party is "necessary" but joinder is not feasible because the party is not subject to service of process or joinder would deprive the Court of subject matter jurisdiction, then the Court must determine under Rule 19(b) if in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.* at *7-8.

Because 11616 "I" Street allegedly owns real estate in Omaha, it should be subject to service of process by this Court. In addition, there is no suggestion in the pleadings that joinder of 11616 "I" Street would deprive this Court of subject matter jurisdiction, whether based on diversity of citizenship or statutory supplemental jurisdiction. Accordingly, Rule 19(a), alone, should govern this joinder issue.

If this case were to proceed to final adjudication in the absence of the landlord, the landlord could later claim not to be bound by the judgment and attempt to file its own non-disparagement case as a purported third-party beneficiary of the Non-Disparagement Clause. In that scenario, an adjudication in this case adverse to Wright and WPCO could, as a practical matter, adversely affect 11616 "I" Street's interest even if 11616 "I" Street were not bound by collateral estoppel. *See MeccaTech, Inc. v. Kiser*, No. 8:05 CV 570, 2006 U.S. Dist. LEXIS 66784, *24 (D. Neb. Sept. 18, 2006) (even in the absence of collateral estoppel, adjudication of rights and liabilities under a contract could "have the consequence of working against" absent parties' interest in the contract; hence, the absent parties are "necessary" parties under Rule 19(a)). Likewise, in this scenario Crabar would be forced to relitigate the identical issues raised by the Counterclaims in the subsequent litigation and, hence, an adjudication in Crabar's favor

this case would not have accorded complete relief under the Non-Disparagement Clause to Crabar and would have left Crabar exposed to inconsistent judgments. *See id.* at *23-24.

For the foregoing reasons, adjudicating the "landlord" disparagement claims in the absence of the landlord itself, 11616 "I" Street, would (a) deprive Crabar complete relief, (b) as a practical matter impair or impede 11616 "I" Street's ability to protect whatever interest it may have in the Non-Disparagement Clause, and (c) expose Crabar to the risk of inconsistent judgments and having to litigate the "landlord" disparagement claims twice in separate cases. For these reasons, 11616 "I" Street is a Rule 19(a) "necessary party" under all three relevant criteria.

## CONCLUSION

For the foregoing reasons, Crabar/GBF, Inc. respectfully requests that the Counterclaims in this case be dismissed for failure to state a claim upon which relief may be granted or, alternatively, for failure to join 11616 "I" Street as a necessary party under Rule 19.

Dated: June 29, 2017

        Crabar/GBF, Inc., Plaintiff/
        Counter-Defendant

    By:   /s/ Paul M. Shotkoski
        One of its Attorneys

        Stephen O'Donnell (IL Bar #6193883)
        Elissa L. Isaacs (IL Bar #6207162)
        CULHANE MEADOWS, PLLC
        30 S. Wacker Drive
        Suite 2200
        Chicago, IL 60606
        Tel. (312) 600-0305
        Fax (312) 600-4425
        sodonnell@culhanemeadows.com
        eisaacs@culhanemeadows.com

        Paul M. Shotkoski, #20873
        Patrick S. Cooper, #22399
        FRASER STRYKER PC LLO
        500 Energy Plaza
        409 South 17th Street
        Omaha, NE 68102
        Tel. (402) 341-6000
        pshotkoski@fraserstryker.com
        pcooper@fraserstryker.com

## CERTIFICATE OF SERVICE

    I hereby certify that on the 29th day of June, 2017, the undersigned caused the above and foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF System, thereby providing electronic notice of such filing to all counsel of record.


        /s/ Paul M. Shotkoski

1706435 v1