IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CRABAR/GBF, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MARK WRIGHT, WRIGHT PRINTING COMPANY, JAMIE FREDRICKSON, and ALEXANDRA KOHLHAAS, <br><br> Defendants. | 8:16-CV-537 <br><br> MEMORANDUM AND ORDER |

This matter comes before the Court on an application for a charging order (filing 611) from the plaintiff, Crabar/GBF, an objection to that application (filing 638), and a motion to temporarily stay enforcement of judgment without a bond or other security (filing 634) from two of the defendants, Mark Wright and Wright Printing.

The Court entered an amended judgment against Mark Wright in the amount of $1,750,000, and against Wright Printing in the amount of $1,000,000. Filing 589. Mark Wright has an interest in two Nebraska limited liability companies: 121 Court, LLC, and 11616 "I" Street, LLC. *See* filing 611. Wright proposes that this Court should deny the charging order, and issue a stay without a bond, so that Wright may effectuate a proposed sale of the property owned by 121 Court, LLC. *See* filing 638; filing 637-2; filing 646-2. According to Wright, selling the property means he will have enough cash to obtain a bond to stay execution of the judgment with proper security.

A charging order allows a judgment creditor, like Crabar, to obtain a lien on the transferable interest of a judgment debtor, like the defendants. Neb.

Rev. Stat. § 21-142; Fed. R. Civ. P. 69; *see also Morgan Stanley Smith Barney LLC v. Johnson,* 952 F.3d 978, 982 (8th Cir. 2020). But the defendants' justification for obtaining a stay is that they want to sell some property held by one of the LLCs which would be subject to the charging order. Filing 635; filing 638. Staying execution of the judgment would make the charging order moot, they say, and issuing a charging order would allegedly frustrate the purpose of the sale of property by the LLC.

*Motion for Stay*

As has been articulated <u>several</u> times, the Court considers a number of factors, as set forth in *Dillon v. City of Chicago,* 866 F.2d 902, 904-5 (7th Cir. 1988), in determining whether to stay enforcement of judgment without posting a bond or other security. *E.g.,* filing 622. Weighing heavily against the defendants currently is "the degree of confidence [the Court] has in the availability of funds to pay the judgment." *Dillon,* 866 F.2d at 904. Additionally, as evidenced by Crabar's application for a charging order, there appears to be a complex collection process in this case, primarily because of Mark Wright's behavior. The *Dillon* factors weigh heavily against allowing an unsecured stay, even temporarily.

While Wright has provided a signed purchase agreement, this is far from a "done deal." The defendants contend that the sale will take, at most, 75 days to close, following a 45 day feasibility period and a 30 day closing window. Filing 648 at 2. But the purchaser has several options to terminate the agreement. Filing 646-2 at 2; filing 646-2 at 4-5; filing 646-2 at 7; filing 646-2 at 8; filing 646-2 at 9. A multi-million dollar sale negotiated and executed in *only ten days* is fraught with danger. *See* filing 648 at 2. And the Court is not sure, even once the sale has closed, how quickly the defendants would be able to obtain the proceeds from the proposed sale, or how long it would take to post

a bond after that.[1] Considering Wright hasn't been able to obtain a bond in several months, it's unclear how he could obtain one only 15 days after the sale of the property owned by 121 Court, LLC.

It seems likely, if the Court grants a limited stay *now*, the defendants will come back in a few months to request additional time. And an unsecured stay lasting until the defendants are able to post adequate security bond does nothing to ensure that the defendants will actually *obtain* that security. The Court should not, in the interest of judicial economy, be burdened with keeping tabs on Mark Wright and his property and adjudicating successive motions to stay.

The defendants have not explained why a sale of the property could not have happened sooner. The Court made clear on June 29, 2023, that the defendant needed a supersedeas bond or an irrevocable letter of credit as security for a stay. Filing 567 at 2. Mark Wright waited until the *last possible day* to accept the proposed offer for the sale of the property owned by 121 Court. *See* filing 637-2. A stay is not warranted under these circumstances. The defendant's motion will be denied.

*Charging Order*

A money judgment is enforced in accord "with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a). Under Nebraska law, a judgment creditor may obtain a charging order, which allows the creditor to receive distributions from an LLC that would otherwise be paid to the judgment debtor. Neb. Rev. Stat. § 21-142 (the Revised Uniform Limited Liability Company Act). Crabar has

---

[1] The building isn't owned by Wright, but by an LLC, and it's unclear how quickly the proceeds from the sale would be distributed to all of the LLC members. That's part of why this Court denied the pledge agreement as adequate security for a stay. *See* filing 567.

3

satisfied the requirements to obtain a charging order. *See*, *e.g., Gen. Elec. Cap. Corp. v. JLT Aircraft Holding Co.,* No. 09-cv-1200, 2010 WL 3023316, at *3 (D. Minn. July 28, 2010) (applying the uniform act).

The defendants do not appear to object to a charging order as to 11616 "I" Street, LLC. *See* filing 638. The defendants effectively argue that if the charging order is issued as to 121 Court, LLC, the defendants will not be able to obtain a bond in order to secure a stay through the appeals process. A charging order is discretionary, *see* Neb. Rev. Stat. § 21-142(a), so the defendants are asking this Court to exercise that discretion so that they may obtain a bond. But denying the charging order would have the same effect as staying execution of the judgment, and the Court will not do so for the reasons explained above.

Crabar represents—and brought the receipts to prove—that Mark Wright is actively concealing his assets to prevent Crabar's collection of its judgment. *See* filing 640; filing 641-1. Such evidence demonstrates a charging order is appropriate. *See Morgan Stanley Smith Barney*, 952 F.3d 978, 982-83; *Gen. Elec. Cap. Corp.*, 2010 WL 3023316, at *3. In fact, such evidence indicates additional measures may be warranted to ensure Crabar can collect its judgment. *See* Neb. Rev. Stat. § 21-142(b)(1). Federal law allows the Court to appoint a receiver in cases like this, in "accord with the historical practice in federal courts or with a local rule." *See* Fed. R. Civ. P. 66.

> "A receiver is an extraordinary equitable remedy that is only justified in extreme situations." No formula determines when a receiver should be appointed; factors we typically consider are: "a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or

4

diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more harm than good."

*Morgan Stanley Smith Barney*, 952 F.3d at 980-81 (citations omitted) (quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 2016)).

The present situation meets the criteria of an "extreme case." Crabar has presented evidence that there is a high "probability that fraudulent conduct has occurred," and there is "imminent danger that property will be concealed, lost, or diminished in value." *Id.* at 981. Crabar has evidence that Mark Wright violated the Uniform Voidable Transactions Act, Neb. Rev. Stat. § 36-803. Filing 641-1 at 9. And a receivership "may be necessary when a judgment debtor is using LLCs . . . to shield assets and income from creditors by keeping assets undistributed or otherwise out of reach." *Morgan Stanley Smith Barney*, 952 F.3d at 983. That appears to be exactly what Mark Wright is doing here. *See* filing 641-1 at 15.

The defendants assert that Crabar "speculates and misinterprets bank statements and [Wright Printing] financials to fit its own narrative." Filing 648 at 2-3. But the defendants haven't offered any alternate explanation for Wright's actions, nor have they explained what Crabar would have discovered had it taken depositions. *See id.* Crabar has provided the Court with bank statements, and the evidence supports Crabar's description of Wright's behavior. *See* filing 641-1.

Crabar has not asked for a receiver. Upon an appropriate motion from Crabar, the Court may be persuaded to appoint one, likely following a hearing. *See Morgan Stanley Smith Barney*, 952 F.3d at 981. The parties are encouraged to meet and confer to stipulate to a mutually agreeable receiver for

this case. If no agreement can be reached, the Court will consider proposals, and will in all likelihood make an appropriate selection of a received to monitor this case.

IT IS ORDERED:

1. The defendants' motion to stay execution of judgment ([filing 634](filing 634)) is denied.

2. Crabar's application for a charging order ([filing 611](filing 611)) is granted.

3. The defendants' objection ([filing 638](filing 638)) is overruled.

4. Crabar's motion for leave to restrict ([filing 663](filing 663)) is granted.

5. Crabar's motion for leave to file a sur-reply brief ([filing 664](filing 664)) is denied as moot.

6. The transferable interests of Mark Wright in 121 Court, LLC and 11616 "I" Street, LLC, are charged with payment of the unsatisfied amount of the judgment.

7. This Order shall constitute a lien on all of Mark Wright's interests in 121 Court, LLC, and 11616 "I" Street, LLC.

8. Upon receipt of this Order, 121 Court, LLC, and 11616 "I" Street, LLC, are hereby required to pay into the registry of

the Court any distribution that would otherwise be paid to Mark Wright, sufficient to satisfy the judgment.

9. The Clerk of the Court shall accept such funds and deposit them into an interest-bearing account until further order of the Court.

10. Crabar shall serve 121 Court, LLC, and 11616 "I" Street, LLC, with a copy of this Order and shall file proof of such service with the Court.

11. The parties shall meet and confer on stipulating to who will act as a receiver on or before December 6, 2023.

12. Crabar shall file a motion or stipulation for appointment of a receiver on or before December 8, 2023.

13. The Clerk of the Court shall set a case management deadline for December 8, 2023, with the following docket text: Check for motion or stipulation for appointment of receiver.

Dated this 22nd day of November, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge